# In the United States Court of Federal Claims

No. 10-480 C
(Filed Under Seal: August 20, 2010)
(Reissued: August 26, 2010)[*]

*********************************************
| | |
|---|---|
| BILFINGER BERGER AG SEDE SECONDARIA ITALIANA, * | |
| * | 28 U.S.C. § 1491(b)(2); RCFC 65; |
| Plaintiff, * | Motion for Temporary Restraining Order; Motion for Preliminary |
| * | Injunction; FMC Corp.; Zenith |
| v. * | Radio Corp.; Preponderance of the |
| * | Evidence Standard; Textron, Inc. |
| THE UNITED STATES, * | |
| * | |
| Defendant, * | |
| * | |
| and * | |
| * | |
| COOPERATIVA MURATORI RIUNITI, * | |
| * | |
| Defendant-Intervenor. * | |

*********************************************

Seamus Curley, Washington, DC, for plaintiff. Fernand A. Lavallee and C. Bradford Jorgensen, of counsel.

L. Misha Preheim, United States Department of Justice, Washington, DC, for defendant. Katherine Denzel, United States Army Corps of Engineers, Europe District, of counsel.

Joseph Hornyak, McLean, VA, for defendant-intervenor. T. Wayne Gray and Megan Mocho Jeschke, of counsel.

**ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

**SWEENEY**, Judge

This postaward bid protest comes before the court on Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction. On August 13, 2010, a hearing was held on

---

[*] The court filed this order under seal and advised the parties to propose redactions. In their August 25, 2010 joint status report, the parties indicated that no redactions were necessary.

plaintiff's motion, wherein Bilfinger Berger AG Sede Secondaria Italiana ("BBSSI") seeks a temporary restraining order and preliminary injunction that (1) prevents the United States Army Corps of Engineers ("Corps") from issuing any task orders to the awardee and defendant-intervenor, Cooperativa Muratori Riuniti Impresa Generale di Construzioni ("CMR"), under Job Order Contract ("JOC") number W912GB-10-D-0007, and (2) requires the Corps to suspend performance of the JOC, including all task orders issued to CMR, until this action is resolved.[1]

Both the Tucker Act, 28 U.S.C. § 1491(b)(2) (2006), and RCFC 65 grant the United States Court of Federal Claims the authority to issue temporary restraining orders and preliminary injunctions. Preliminary injunctive relief is an extraordinary and drastic remedy. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam); FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). The standards for obtaining emergency relief, such as a temporary restraining order, are identical to those that must be satisfied before a preliminary injunction may issue. Four Rivers Invs., Inc. v. United States, 77 Fed. Cl. 592, 594-95 (2007). The moving party must demonstrate that: (1) it has a likelihood of success on the merits; (2) it will suffer irreparable harm if preliminary relief is not granted; (3) the harm it will suffer outweighs the harm to the government and to third parties; and (4) the grant of relief is not contrary to the public interest. Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983); accord FMC Corp., 3 F.3d at 427; Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc., 908 F.2d 951, 952 (Fed. Cir. 1990); Hosp. Klean of Tex., Inc. v. United States, 65 Fed. Cl. 618, 625 (2005). "No one factor, taken individually, is necessarily dispositive . . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp., 3 F.3d at 427. Conversely, "the absence of any one factor may be sufficient" to deny preliminary injunctive relief. Id.

The court "has considerable discretion in determining whether to award injunctive relief in a bid protest." Magnum Opus Techs., Inc. v. United States, Nos. 10-106C, 10-127C, 2010 WL 2255523, at *26 (Fed. Cl. May 28, 2010); accord FMC Corp., 3 F.3d at 427. "[E]ven if a trial court finds that the government's actions in soliciting and awarding a contract were arbitrary, capricious, or not in accordance with law, the trial court retains discretion on whether to issue an injunction." Acad. Facilities Mgmt. v. United States, 87 Fed. Cl. 441, 472 (2009). "When injunctive relief is warranted, it will only be issued upon a showing by a preponderance of the admissible evidence." Textron, Inc. v. United States, 74 Fed. Cl. 277, 287 (2006); accord GraphicData, LLC v. United States, 37 Fed. Cl. 771, 779 (1997); see also Acad. Facilities Mgmt., 87 Fed. Cl. at 472 ("The standard of proof required for injunctive relief is a preponderance of the evidence."); Idea Int'l, Inc. v. United States, 74 Fed. Cl. 129, 137 (2006) (applying a preponderance standard in ruling on a permanent injunction).

Plaintiff has demonstrated a probable likelihood of success on the merits that the Corps arbitrarily, capriciously, or unlawfully determined that BBSSI was ineligible for the JOC award

---

[1] Defendant has moved, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss the complaint.

because it submitted a Societa Organismi D'Attestazione ("SOA") certification in the name of Bilfinger Berger Hochbau GmbH ("BBH"), a debarred company, as part of its proposal.  Plaintiff maintains that Italian law permits it to utilize an SOA certification in the name of BBH without relying upon any of BBH's resources during contract performance.  Although the Corps procured a legal opinion addressing the SOA certification under Italian law, it failed to provide Italian counsel with all relevant and critical facts related to BBSSI's specific use of BBH's SOA certification in connection with the JOC procurement.  Utilizing this Italian legal opinion to assess plaintiff's proposal, the contracting officer determined that BBSSI was nonresponsible and ineligible for the JOC award.  Therefore, based upon the record developed on its motion for a temporary restraining order and preliminary injunctive relief, plaintiff shows a likelihood of success on the merits that the Corps' exclusion of BBSSI from consideration for the JOC award was arbitrary, capricious, or not in accordance with law.

Absent injunctive relief, plaintiff has shown that it would be irreparably damaged, and an action at law would be unavailing because plaintiff could only recover bid preparation and proposal costs in a suit for damages and not the loss of anticipated profits.  28 U.S.C. § 1491(b)(2) (providing that the court "may award any relief . . . including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs" (emphasis added)); see also Heritage of Am., LLC v. United States, 77 Fed. Cl. 66, 78 (2007) (stating that, "where . . . plaintiff has no action against the United States for lost profits, the harm to plaintiff is irreparable and that harm satisfies the second criterion for injunctive relief").  Plaintiff has established irreparable injuries based upon: (1) a loss of work flow and dependency upon the work encompassed under the JOC in order to maintain its viability in Italy, see Cardinal Maint. Serv., Inc. v. United States, 63 Fed. Cl. 98, 110 (2004) (recognizing that "a party suffers irreparable injury when it loses the opportunity to compete on a level playing field with other bidders. . . . [W]hen a plaintiff shows that it was excluded from the bidding process, perhaps solely because of the government's improper conduct, the plaintiff has satisfied requirement for irreparable injury"); accord PGBA, LLC v. United States, 57 Fed. Cl. 655, 664 (2003); and (2) an anticipated loss of approximately forty percent of revenue, a figure that is based upon the revenue BBSSI derived from the predecessor JOC and its expected revenue from the JOC at issue in this case,[2] see SAI Indus. Corp. v. United States, 60 Fed. Cl. 731, 747 (2004) (recognizing that irreparable injury can be demonstrated via lost profits).

---

[2]  Plaintiff also claims irreparable harm based upon an inability to operate its business due to an anticipated reduction in personnel.  Specifically, it asserts that a loss of employees would require BBSSI to implement administrative changes in order to preserve its ability to maintain oversight and control over other existing contracts.  Although the court does not address this allegation at this juncture, it notes that a potential loss of employees, absent a more specific showing, has not been deemed an irreparable harm.  See Computer Scis. Corp. v. United States, 51 Fed. Cl. 297, 324 (2002); accord PGBA, LLC v. United States, 60 Fed. Cl. 196, 221 (2004); cf. Global Computer Enters., Inc. v. United States, 88 Fed. Cl. 350, 454 (2009) (recognizing that the loss of skilled employees critical to a company's performance in a specialized field may constitute an irreparable harm).

Plaintiff has shown that the harm it would suffer outweighs the harm to defendant and defendant-intervenor. Whereas defendant could have begun issuing task orders under the JOC in May 2010, the record indicates that it did not do so until at least early June 2010. The reasons for this perceived delay have not been fully explained. Additionally, defendant has not fully explained its inability to utilize other contracting vehicles, such as the Italy Multiple Award Task Order Contract, to mitigate any harm it may incur by proceeding with work during the pendency of this protest. Moreover, defendant has not fully explained any causal link between the work encompassed by the JOC, which has been characterized as "minor construction, quick repair, and maintenance activities," and the safety, training, and morale of soldiers returning from deployment in Afghanistan.[3] Although defendant-intervenor asserts that it would incur employment costs for idle employees and subcontractors, as well as other expenses associated with performing task orders under the JOC, any harm that might befall defendant-intervenor would ultimately stem from losing (1) work that was the result of an unlawful contracting process, which should be discounted, see Cardinal Maint. Serv., Inc., 63 Fed. Cl. at 111 (stating that the beneficiary of a Competition in Contracting Act violation suffers no harm when the violation is corrected), or (2) employees and subcontractors hired specifically to perform the work encompassed by the JOC.

Finally, the public interest in preserving the integrity and fairness of the procurement process is served by enjoining arbitrary or capricious agency action, particularly in light of the contracting officer's initial determination that plaintiff's proposal constituted the best value to the government.

**Accordingly, it is hereby ORDERED:**

1. Defendant, its officers, agents, employees, representatives, and all other persons acting in connection therewith are hereby restrained and enjoined from issuing any new task orders to CMR under JOC number W912GB-10-D-0007 and are directed to suspend performance by CMR on any previously issued task order under JOC number W912GB-10-D-0007.

2. **This Temporary Restraining Order shall expire by its terms at 11:59 p.m., Eastern Daylight Time, on Friday, September 3, 2010, unless within such time the order is extended for cause shown or unless defendant consents that it may be extended for a longer period.**

---

[3] Absent further explanation, the court is not persuaded by defendant's contention that the work encompassed by the JOC is "mission critical" or its invocation of an April 2008 incident that was memorialized in a video uploaded onto the website YouTube, see http://www.youtube.com, to justify the urgency of the work based upon national security concerns.

3. Pursuant to RCFC 65(c), no restraining order shall issue except upon the giving of security by plaintiff for the payment of such costs and damages as may be incurred or suffered by any party found to have been wrongfully enjoined or restrained. During the August 13, 2010 hearing, the court sought input from the parties concerning an appropriate amount of a bond and instructed them to confer and advise the court of their respective views by no later than Wednesday, August 18, 2010. Upon review of the parties' submissions, the court **conditions this order upon plaintiff's posting of bond, by no later than 5:00 p.m., Eastern Daylight Time, on Tuesday, August 24, 2010, in the amount of $50,000.00 or providing a surety that will furnish a bond in the same amount, subject to the approval of the Clerk of Court.** If plaintiff has any questions about the proper procedure for securing a bond, then it should contact the Clerk's office at (202) 357-6400.

4. The parties shall file a joint status report proposing a schedule for additional proceedings, as well as a deadline by which defendant shall file the administrative record, **by no later than 5:00 p.m., Eastern Daylight Time, on Wednesday, August 25, 2010.**

The court has filed this order under seal. The parties shall confer to determine proposed redactions that are mutually agreeable. Then, by no later than **Friday, September 3, 2010**, the parties shall file under seal a joint status report indicating their agreement with the proposed redactions and attaching a complete copy of the court's order with all redactions clearly indicated.

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge